UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTHEA KEEVER, | No. 2:13-cv-00029-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| THE MEDIATION CENTER OF SAN JOAQUIN, et al., | |
| Defendants. | |

Defendants The Mediation Center of San Joaquin ("the Mediation Center"), Ken Davis, Elise Willis, Harold Basler, Jennifer Wells, Carla Wolf, and Lea Issetti (collectively "defendants") move for summary judgment of all claims in this employment discrimination and retaliation case. Defs.' Mot. Summ. J., ECF No. 29. Plaintiff Althea Keever opposes the motion. Opp'n, ECF No. 31. The court held a hearing on the matter on October 24, 2014. Stephanie Butori appeared for defendants; no appearance was made for plaintiff.[1] As explained below, the court GRANTS defendants' motion.

/////

/////

---

[1] Counsel Daniel Mitchell subsequently informed the court his absence was due to a medical issue. He has notified the court he submits the matter on plaintiff's written response.

1

## I. INTRODUCTION

### A. Allegations in Complaint

Plaintiff's complaint makes eleven claims relying on federal and state law, with each claim made against all defendants: (1) violation of the California Constitution Art. 1, Section 8; (2) employment discrimination; (3) harassment; (4) failure to maintain environment free from harassment; (5) retaliation; (6) violation of public policy; (7) breach of implied in fact contract; (8) breach of implied covenant of good faith and fair dealing; (9) intentional infliction of emotional distress ("IIED"); (10) negligent infliction of emotional distress ("NIED"); and (11) deprivation of civil rights. *See* Compl. at 6–22. Each claim references a list of laws and statutes; in its analysis below, the court construes each claim as tied to the law most closely associated with the name of the claim and its supporting allegations.

Plaintiff, who is African American, bases her claims on allegations stemming from her race, gender, age, national origin, and association with her husband, who is white. *Id*. She initially filed her action in San Joaquin Superior Court on December 6, 2012, and defendants removed it to this court on January 7, 2013. Notice of Removal ECF No. 2.

### B. Evidentiary Considerations: Plaintiff's Objections

Plaintiff objects to the declarations of Davis and Wells in support of the motion for summary judgment as inadmissible because they lack foundation, are hearsay, or lack personal knowledge. Obj. to Evidence ECF Nos. 31-3, 31-4. Because the court does not consider these declarations in ruling on the instant motion, the court does not reach plaintiff's objections. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

Plaintiff also challenges all but three of defendants' undisputed facts. Defs.' Separate Statement of Undisputed Facts ECF No. 29-4 ("UMF"); Pl.'s Separate Statement of Material Facts ECF No. 31-2 ("Pl.'s Separate Statement"). Defendants support each undisputed fact with a citation to plaintiff's sworn deposition. For six facts, plaintiff responds that "[p]laintiff did not so testify"[2] without addressing the valid citation defendant offers in support.

---

[2] Disputing UMF numbers 14, 36, 37, 41, 62, 63.

2

In response to other facts, plaintiff cites repeatedly to the same portion of her declaration in opposition to summary judgment, "Decl of Keever Decl. 3-9:1-3 *[sic]*."[3] *Id.* at 6-14. The court construes this citation as referring to the body of plaintiff's declaration as a whole. While disregarding the many legal conclusions in the declaration, the court notes that plaintiff says generally that "physical abuse and epithets, and derogatory comments or slurs not once in awhile, but ever[y]day; coupled with unwelcome touching of my body in a sexually offensive manner; soliciting and effectuating kisses and hugs; touching and rubbing my body, continually subjected me to associated sexually comments," including Davis's comment that he "liked his 'women chocolate.'" Decl. in Support of Opp'n (Pl.s' Decl.) ECF No. 31-1 at 3. She describes one incident in particular, on the day of her termination on June 29, 2011[4], during which Davis "verbally assaulted and abused" her for more than two hours, with Wells also present. *Id.* at 3-4. She admits in her deposition that she was not struck, nor did she suffer any physical injuries. Keever Dep. 255:3-7. While plaintiff in her declaration also references her medical condition and describes certain of defendants' actions as related to concerns about her taking "drugs," her complaint does not contain any allegations based on her medical condition as discussed further below; the court disregards these averments.

In response to defendants' remaining undisputed facts, plaintiff objects despite the factual support provided by her own deposition;[5] she also contends certain facts lack foundation,[6] or simply states a purportedly opposing fact,[7] all without supporting citations.

The party opposing a motion for summary judgment cannot "rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets

---

[3] Disputing UMF numbers 15, 22-35, 40, 42, 43-46, 49, 55-61.

[4] While plaintiff's declaration at this point identifies the year as 2012, this date is a typographical error given plaintiff's termination in 2011.

[5] Disputing UMF numbers 13, 16-18, 25-35, 39-40, 42-46, 50.

[6] Disputing UMF numbers 13, 16-20, 25, 30, 34, 39, 52-54.

[7] Disputing UMF numbers 24, 50, 51.

forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotations omitted). In *Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1126 (E.D. Cal. 2006), the court held a plaintiff cannot successfully oppose a defendant's motion for summary judgment with mere suspicions and undocumented arguments. *See also S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (holding that "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda").

The Local Rules of this court require that "[a]ny party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." *See* Local Rule 260. Plaintiff must identify with particularity portions of the record that call into question the material facts of this case. *See Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1377 n.34 (E.D. Cal. 1995) ("On summary judgment, where our Local Rule 260 requires the parties to cite to [the] evidentiary record, it is not the court's job to go sifting through depositions looking for evidence.").

For the majority of defendants' submitted facts, plaintiff fails to cite specifically to the record to demonstrate a genuine dispute. Her attempts to establish disputed facts consist primarily of conclusory statements of the law, not a denial of facts. The court thus considers facts 13 to 63 as set forth in defendants' separate statement to be undisputed material facts for the purposes of this motion, while also crediting the few facts actually supported by plaintiff's declaration and not inconsistent with the record as a whole.

C.   Undisputed Facts and Procedural Background

Defendants Davis, Willis, Wells, Wolf, Basler, and Issetti are all employees of The Mediation Center. UMF 48. Only Davis was plaintiff's supervisor. UMF 47. Plaintiff is an

African-American woman who was employed by The Mediation Center from February 4, 2005[8] until June 29, 2011.  Keever Dep. 37:7-24, 59:11-12, 179:8-10.  The Mediation Center is a private corporation, not tied to the state or federal government.[9]  UMF 50.

Plaintiff was hired as a case manager under the terms of the employee handbook she signed on February 9, 2005.  Keever Dep. 60:9-19.  Her status as an at-will employee was confirmed to her, in writing, on at least four occasions.  UMF 62.  Plaintiff believed this meant she could only be fired for cause, but could leave at any time.  Keever Dep. 40:1-6.  At some point, Keever began working as both case manager and director of Adult Stress and Anger Management (ASAM).  Keever Dep. 71:1-19; UMF 13-15.  Beginning in late 2010 and up to her termination, plaintiff's supervisor was Ken Davis, the interim Executive Director and member of the Board of Directors.  UMF 47; Keever Dep. 26:6-14.  In November 2010, Davis promoted Keever to Operations Manager.  Keever Dep. 71:17-19, 72:3-73:1, 73:6-74:14, 81:11-19.  Davis made the decision to give plaintiff more responsibility and was supportive of the promotion and Keever's abilities.  UMFs 13, 15.

In January or February 2011, Harold Basler replaced plaintiff as director of ASAM.  UMF 17.  Plaintiff began transitioning into a new Facilities Coordinator/Volunteer Coordinator position, and signed her new job description on April 28, 2011.  UMF 19.  Basler was responsible for ASAM, though plaintiff maintained some involvement, limited to ordering supplies and assisting Basler when necessary.  UMFs 17, 19.  Basler complained to Davis that plaintiff was intruding too much in assisting with ASAM, to the point where he felt harassed by

---

[8] Plaintiff asserts in her declaration she began working at The Mediation Center in February 2004.  Pl.'s Decl. at 1.  As it signaled at hearing, the court assumes this is a typographical error, as plaintiff agreed in her sworn deposition her "starting pay in February 2005" was $9 per hour, and defendants submit a corroborating exhibit, Exhibit 3 ECF No. 29-2, that shows plaintiff's initial start date as February 2005.

[9] Defendants submitted a request for judicial notice with their summary judgment motion, requesting the court take notice of the business entity registration from the California Secretary of State website showing The Mediation Center is a registered private corporation.  Req. for Jud. Notice ECF No. 29-5.  Plaintiff does not oppose this request.  ECF No. 31.  The court takes judicial notice of this document as one whose accuracy can be accurately and readily determined.  Fed. R. Evid. 201(b)(2).

plaintiff.  UMF 25.  On May 4, 2011, plaintiff sent an email to Davis expressing concern that Basler was underperforming as director of ASAM, stating "[h]e couldn't handle his job and couldn't handle the responsibility . . . I was doing his job for him."  UMF 28.  On May 5, plaintiff and defendant Davis met to discuss her concerns about defendant Basler.  UMF 29.  Davis told plaintiff she should no longer interfere with Basler or ASAM, and if she did, she would be disciplined.  UMFs 30, 31.  The following week, plaintiff again went to Davis to express her concerns about Basler.  UMF 31.  Davis repeated his instruction to stop interfering with Basler's direction of ASAM, and set up a meeting for him, Basler, and plaintiff to discuss.  UMF 34.  In that meeting, plaintiff agreed to no longer interfere with ASAM.  UMF 35.

Plaintiff then complained to defendant Jennifer Wells, the Human Resources manager for The Mediation Center, saying she was worried about ASAM and Basler's performance.  UMF 38.  Plaintiff herself says she was complaining to Wells about the "physical sexual harassment" she was suffering.  Pl.'s Decl. at 3, 4.  Wells spoke to Davis about her conversation with plaintiff.  UMF 39.  On June 27, 2011, an employee brought an ASAM client complaint against Basler to Davis.  UMF 40.  Wells told Davis she observed plaintiff coaching the client on how to fill out the complaint form against Basler, and saw plaintiff invite all of the clients to fill out complaints about ASAM.  *Id.*

On an unknown date, when plaintiff was still employed at The Mediation Center, Davis told plaintiff he liked African-American women.  UMF 23.  Plaintiff avers Davis said specifically that he "liked his women chocolate."  Pl.'s Decl. at 3.  On another occasion, Davis, Basler, and several other co-workers commented plaintiff "looked good" after her dramatic weight loss in March 2011.  UMF 58.  While plaintiff also avers that Davis subjected her to daily "physical abuse and epithets . . . coupled with unwelcome touching of my body in a sexually offensive manner," Pl.'s Decl. at 3, she provides no dates or concrete details.  She says she reported her complaints to The Mediation Center's Board of Directors, and that the complaints are "contained in their minutes," *id*. at 4, but does not provide copies of the minutes.

On June 29, 2011, Davis terminated plaintiff's employment.  UMF 45.  In the meeting to terminate her, Davis told her she was insubordinate, giving other employees difficulty

and "constantly in ASAM business." UMF 46. Plaintiff says that Davis "verbally assaulted and abused" her for more than two hours during the meeting, and says Wells also was present. Pl.'s Decl. at 3-4. She was not physically struck, or injured. Keever Dep. 255:3-7.

On August 10, 2011, plaintiff filed a Department of Fair Employment and Housing ("DFEH") complaint against The Mediation Center. Keever Dep. 191:4-23. The complaint form's heading contains the names of both DFEH and the Equal Employment Opportunity Commission ("EEOC"). *Id.* The complaint reports alleged discrimination against plaintiff by Davis and The Mediation Center on the basis of her perceived disability. Ex. 22 ECF No. 29-2 ("Complaint of Discrimination"). The perceived disability is identified as related to plaintiff's medical leave in March and April 2011, and her medication status during that time. *Id.* Specifically, plaintiff alleges defendants confronted her about her use of medication at work in an harassing manner. *Id*. The DFEH complaint does not report any discrimination on the basis of race or gender. *Id*.

II.     SUMMARY JUDGMENT STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[10]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

---

[10] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

7

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

/////
/////
/////

III. ANALYSIS

A. FEHA/Title VII Claims

As noted, plaintiff contends defendants discriminated against her in violation of Title VII and the California Fair Employment and Housing Act ("FEHA") on account of her age, race/color, national origin/ancestry, and association. Compl. at 3-4. Plaintiff does not specify whether her claims are brought against her former employer The Mediation Center, or each individual defendant. FEHA does not allow discrimination suits against individuals, but only against employers. *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1167-74 (2008). Hence, any action against an individual under FEHA is barred.

Defendants argue plaintiff's FEHA and Title VII claims for discrimination, harassment, failure to prevent discrimination and harassment, and retaliation are barred because plaintiff did not exhaust her administrative remedies as to these claims. Plaintiff's completed DFEH complaint is a typed document, prepared on July 15, 2011. Ex. 22 ECF No. 29-2. Plaintiff's handwritten signature is dated August 9, 2011. *Id.* The document is stamped as received by DFEH on August 10, 2011. *Id.* The DFEH complaint alleges plaintiff was terminated due to her perceived disability and identifies defendants Ken Davis and The Mediation Center only. As noted above, the DFEH complaint states plaintiff believes her termination was due to her "requesting time off for various medical appointments and issues pertaining to taking medication while on duty." *Id.* It does not allege any harassment, retaliation, or hostile work environment. *Id.* Defendants have produced a right-to-sue letter concluding the DFEH investigation, addressed to plaintiff and dated December 20, 2011. Notice of Right-to-Sue ECF No. 34.

Under both Title VII and FEHA, exhaustion of administrative remedies is a prerequisite to resort to the courts. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002); *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995). Under Title VII, a plaintiff must file a complaint with the EEOC.

/////

/////

9

Plaintiff argues due to a worksharing agreement, any claim filed with DFEH is also constructively filed with the EEOC.[11]  Pl.'s Decl. 4:17-25, ECF No. 31.  The Ninth Circuit has held that, under the agencies' worksharing agreement, a charge filed with the DFEH is deemed constructively filed with the EEOC; the EEOC and DFEH cross-designate the other as its agent for the purpose of receiving charges.  *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000); *see also Laquaglia v. Rio Hotel & Casino, Inc.,* 186 F.3d 1172, 1175 (9th Cir. 1999) ("[A] charge filed with the state agency before the 300–day filing deadline expires is deemed automatically filed with the EEOC on that same day.").  The Ninth Circuit also has determined that whether the state agency actually forwarded the charge to the EEOC or whether the EEOC actually received it is irrelevant.  *Laquaglia*, 186 F.3d at 1175; *Dinuba Med. Clinic*, 222 F.3d at 585.  This court deems the DFEH complaint constructively filed with the EEOC.  That does not end the analysis however.

Under FEHA, the scope of the DFEH complaint defines the scope of the subsequent civil action.  Unlawful conduct not included in a DFEH complaint is not considered by a court unless the conduct is like or reasonably related to the allegations in the administrative complaint, or can reasonably be expected to grow out of an administrative investigation.  *Lelaind v. City & Cnty. of San Francisco*, 576 F.Supp.2d 1079, 1090 (N.D. Cal. 2008) (citations omitted)*; Ramirez v. Silgan Containers*, No. CIV F 07–0091, 2007 WL 1241829, at *5 (E.D. Cal. Apr. 26, 2007) ("Where additional claims [in the civil complaint] . . . stem from the [same conduct] identified in the [administrative] complaint, [the additional claims that] would have been uncovered during the course of a DFEH investigation are sustainable.").  The same "reasonably related" analysis applies to claims filed with the EEOC.  *See Vasquez v. Cnty. of Los Angeles*, 349

---

[11] Plaintiff points to the heading at the top of the DFEH complaint, which says "California Department of Fair Housing and EEOC."  However, the document also reflects a lining out of both "EEOC #" at the top of the page and an option, directly above the complainant's signature, to indicate the complainant would also like her charge filed with the EEOC.  Ex. 22 ECF No. 29-2.  Although it appears the court could infer the EEOC references were stricken when plaintiff signed the form, with notice to the plaintiff her complaint would not be filed concurrently with the EEOC, in light of Ninth Circuit precedent, the court considers the claim constructively filed with the EEOC.

10

F.3d 634, 644 (9th Cir. 2003); *see also Oubichon v. North American Rockwell Corporation,* 482 F.2d 569 (9th Cir. 1973).

Here, as noted, plaintiff's complaint filed in this court states claims for discrimination based on her age, sex, race/color, national origin/ancestry and association. Compl. ¶ 9. Her perceived disability based on medical condition is not articulated at all. Her alleged disability discrimination cannot be said to be reasonably related to her later race and sexual discrimination allegations. Race and sex discrimination would not have necessarily been uncovered in a DFEH investigation of termination due to medical appointments and taking medication at work. Plaintiff did not exhaust her administrative remedies as to her FEHA claims. The court grants defendants' motion for summary judgment as to these claims.

Under Title VII, a plaintiff must obtain a right-to-sue letter in order to bring such a claim in court. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citing 42 U.S.C. § 2000e–5(f)(1)). "Failure to observe these requirements renders a suit subject to dismissal in the absence of any equitable consideration to the contrary." *Id.* (relying on *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982)). The Ninth Circuit has held where a plaintiff is entitled to receive a right-to-sue letter from the EEOC, she may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency. *Surrell v. California Water Serv. Co.,* 518 F.3d 1097, 1104 (9th Cir. 2008). Here, plaintiff's right to-sue letter from DFEH was in response to her disability complaint, not the various race- and sex-based claims she asserts before this court. The record discloses no equitable reason to waive the exhaustion prerequisite. Plaintiff has failed to exhaust her administrative remedies with regard to her Title VII claims. The court grants the motion for summary judgment as to plaintiff's Title VII claims.

        B.      Race Discrimination (42 U.S.C § 1981)

Defendants argue plaintiff's own testimony defeats her claim of race discrimination. They point to her deposition, during which plaintiff admitted her supervisor, Davis, was "generally supportive of [her] and [her] abilities" and supportive of her November 2011 promotion. Keever Dep. 82:5-10.

The only evidence offered by plaintiff of racial discrimination includes statements made by defendant Davis. She testified he told her, at most three times, he "liked his women chocolate." Keever Dep. 204:2-10; Pl.'s Decl. at 6. Plaintiff relies on these statements to sustain a claim for association discrimination as well, because they were made within earshot of her husband, who is white. *Id.* at 205. She also testified when she told Davis she was half-Cuban, he replied either "oh" or "woe." *Id*. 232:17-24.

A claim under section 1981 can only be sustained on the basis of race. *See White v. Wash. Pub. Power Supply Sys*., 692 F.2d 1286, 1290 (9th Cir. 1982) ("It is well settled that section 1981 only redresses discrimination based on plaintiff's race."). Plaintiff alleges violations of section 1981 through the creation of a hostile work environment, discrimination on the basis of association, and retaliation.

1. Hostile Work Environment (Harassment Claim)

A claim for hostile work environment may rely on section 1981. *Manatt v. Bank of Am*., 339 F.3d 792, 797 (9th Cir. 2003) (finding a hostile work environment interferes with the "enjoyment of all benefits . . . and conditions of the contractual relationship" of employment and "is therefore actionable under § 1981"). To establish a prima facie hostile work environment claim, plaintiff must raise a triable issue of fact as to whether (1) she was "subjected to verbal or physical conduct" because of her race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment. *Kang v. U. Lim Am., Inc*., 296 F.3d 810, 817 (9th Cir. 2002). The Ninth Circuit also "recognize[s] that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt*, 339 F.3d 792 at 797.

Here, plaintiff points to only a few limited incidents of racially-motivated behavior. The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee is not, by itself, actionable . . ." *Ellison v. Brady*, 924 F.2d 872, 876 (9th Cir. 1991) (internal quotations omitted). In *Hotchkins v. Fleet Delivery Serv*., 25 F. Supp. 2d 1141, 1149 (D. Or. 1998), the court considered whether a single utterance of a highly offensive and inappropriate racial epithet is sufficient to constitute a hostile work environment. Although the

epithet in that case was undisputed, "one isolated or 'stray' act of this nature is insufficient to show discrimination, especially when the remark was not made by a supervisor or other management employee." *Id.*, citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir. 1990); *see also Manatt*, 339 F.3d at 798 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (internal citation omitted); *Jordan v. Clark*, 847 F.2d 1368, 1374–75 (9th Cir. 1988) (no hostile work environment where "off-color" jokes were told in workplace); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004) ("The allegedly harassing incidents, which occurred over the course of more than one year and only two of which contained racially related epithets, did not create a hostile work environment for [plaintiff]."); *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000) (finding no hostile work environment when on several occasions the supervisor called the plaintiff "Medea;" the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor); *Henderson v. Alexander & Baldwin, Inc.*, No. CIV.07-00101 DAE LEK, 2007 WL 4479988, at *7 (D. Haw. Dec. 20, 2007), *aff'd*, 362 F. App'x 594 (9th Cir. 2010) (granting summary judgment in an action for hostile work environment where "[p]laintiff points to a single, isolated incident involving a co-worker's use of a racially derogatory comment.").

Assuming Davis used the phrase "chocolate" in describing women a few times, his terminology is unfortunate and inappropriate but does not rise to the level of severity and abuse required to sustain a claim under section 1981. Plaintiff does not aver these isolated comments affected her work or created an abusive or hostile environment. Plaintiff has not demonstrated a reasonable fact-finder could determine plaintiff experienced a hostile work environment or discrimination on the basis of her race in violation of section 1981. The court grants defendants' motion for summary judgment on this claim; to the extent plaintiff also claims defendants failed to prevent a hostile environment, summary judgment also is granted on this claim.

/////

/////

/////

2. Association

Though the Ninth Circuit apparently has not yet recognized such a claim, other courts have countenanced cases asserting a violation of Section 1981 in the form of discrimination on the basis of plaintiff's association with a member of a protected class. *See, e.g., Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 105 (1st Cir. 1995) (reviewing cases and noting that "[o]ccasionally, [] courts have allowed cases to proceed where a plaintiff challenges a discriminatory action motivated by animosity towards another person's race."); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir. 1988) (white employee who alleged he was terminated for assisting black employee could maintain Section 1981 action); *Alizadeh v. Safeway Stores, Inc*., 802 F.2d 111, 114 (5th Cir. 1986) ("§ 1981 provides a cause of action to a white spouse who alleges that he was discriminated against in employment because of his marriage to a nonwhite*"); Fiedler v. Marumsco Christian School*, 631 F.2d 1144 (4th Cir. 1980) (Section 1981 prohibits private sectarian school from terminating a contractual relationship with a white student because of her association with a black student).

In each appellate decision this court has found upholding Section 1981 as a basis for discrimination on the basis of association, it is the associated party, not the plaintiff, who is a member of a protected class. Even assuming more broadly that the only requirement of Section 1981 is that the challenged discrimination "be in fact motivated by racial discrimination," *Mi Pueblo San Jose, Inc. v. City of Oakland*, 2006 WL 2850016 (N.D. Cal. 2006) (allowing case to proceed where Latino-owned store alleged Latino City official discriminated against it for betraying owners' "Latino roots"), that principle does not aid plaintiff here. Plaintiff has not offered any evidence that reasonably supports the conclusion she was terminated because of her association by marriage with a white male. One generally offensive comment made within earshot of her husband does not a discrimination case make. Summary judgment is granted as to this claim.

/////

/////

/////

### 3. Retaliation

Section 1981 does not include an express retaliation provision, but the Ninth Circuit has concluded that it does encompass retaliation claims. *See Manatt*, 339 F.3d at 795. Plaintiff's retaliation claim is analyzed under the framework of a claim for retaliation under Title VII. *See id*. at 801; *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000). Plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing: (1) she engaged in a protected activity, such as the filing of a complaint alleging racial discrimination; (2) defendants subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Manatt*, 339 F.3d at 800. If plaintiff establishes a prima facie retaliation claim, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See id*. If the employer articulates such a reason, plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *See id.*

Plaintiff avers she complained to defendant Wells about "the physical sexual harassment" she was suffering, but not any racial discrimination. Pl.'s Decl. at 3. Even assuming plaintiff has established a prima facie case, defendants have presented a legitimate, non-retaliatory reason for plaintiff's termination. It is undisputed plaintiff was told to stop interfering with Basler's work in May 2011, and she nevertheless continued to do so repeatedly. Keever Dep. 107-112. In response, plaintiff has not met her burden of establishing a genuine dispute as to whether this basis for termination was a pretext for retaliation. No reasonable fact finder could find plaintiff could prevail on this claim.

### C. Federal Civil Rights Statute (42 U.S.C. § 1983)

To state a claim under section 1983, a plaintiff must establish (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Section 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

Plaintiff's action against The Mediation Center, a private organization, and each individual defendant is precluded, as she has not disputed the private status of both The Mediation Center and the individual defendants. *See* Ex. F ECF No. 29-5 ("Business Entity Detail") (showing The Mediation Center as a registered business entity with the California Secretary of State).

The court grants defendants' motion for summary judgment as to plaintiff's claims under section 1983. Accordingly, plaintiff is not eligible for attorneys' fees under 42 U.S.C. § 1988.

### D. Remaining State Law Claims

Having granted summary judgment on plaintiff's FEHA claim and the related federal claims, the court has discretion to decline jurisdiction over her remaining state claims. 28 U.S.C. § 1367. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted); *see also City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1008 (9th Cir. 2010) (no abuse of discretion when district court dismissed state claims after granting summary judgment on federal claims). Here, no factors weigh in favor of this court retaining jurisdiction. In the interests of judicial economy and fundamental fairness, the court exercises its discretion to remand the remaining state claims to the San Joaquin County Superior Court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (court has wide discretion "to remand rather than to dismiss" when handling cases involving pendent claims, bearing in mind what "best serves the principles of judicial economy, procedural convenience, fairness to litigants, and comity to the States which underlie the pendent jurisdiction doctrine.").

### IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Defendants' Motion for Summary Judgment is GRANTED as to plaintiffs' claims arising under FEHA and federal law.

16

2. The remaining state claims are REMANDED to the San Joaquin County Superior Court.

IT IS SO ORDERED.

DATED: January 6, 2015.

_____
UNITED STATES DISTRICT JUDGE